UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| JESSICA ROBINSON, STACEY JENNINGS, and PRISCILLA MCGOWAN, individually and on behalf of others similarly situated,<br><br>Movants,<br><br>v.<br><br>BROOKE HOLDINGS DBA JACKSON HEWITT TAX SERVICE,<br><br>Respondent. | Case No. _____<br><br><br><br>**UNDERLYING LITIGATION**<br>Case No. 2:19-cv-09066-SDW-LDW (D.N.J.)<br><br><br><br>**MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA** |

## INTRODUCTION

Individual and representative plaintiffs Jessica Robinson, Stacey Jennings, and Priscilla McGowan (collectively, "Movants") in the class action captioned *Jessica Robinson et al. v. Jackson Hewitt, Inc. et al.*, Case No. 2:19-cv-9066(SDW)(LDW) (D.N.J.) (the "Underlying Litigation") bring this Motion to Compel Brooke Holdings DBA Jackson Hewitt Tax Service (Brooke Holdings) to produce documents in compliance with the subpoena *duces tecum* issued in January 2021 (the "Subpoena"). While Brooke Holdings is not a party to the Underlying Litigation, Brooke Holdings is in possession of relevant documents. Brooke Holdings has only produced limited documents in response to the Subpoena.

Specifically, the Subpoena requested documents related to each of the 28 Jackson Hewitt franchise locations Brooke Holdings operates but it has produced documents for only one franchise. The parties are now at impasse. Pursuant to Federal Rule of Civil Procedure 45, Movants respectfully request that this Court issue an Order requiring Brooke Holdings to comply with a duly issued subpoena to produce responsive documents in its possession, custody, or control.

## FACTUAL BACKGROUND

Movants are former employees of Jackson Hewitt alleging antitrust violations in relation to the Jackson Hewitt's "No Poach" agreement in the Underlying Litigation, currently pending in the United States District Court for the District of New Jersey. *See* Declaration of Bradley K. King ("King Decl.,") Ex. A (Operative Complaint). Jackson Hewitt is the second largest tax-preparer in the United States and operates corporate stores and also franchises Jackson Hewitt stores. As part of its business model, Jackson Hewitt enters into standard franchise agreements. These agreements all contain a "No Poach" policy – a specific clause in the franchise agreements prohibiting the soliciting, recruiting, or hiring of any former employee of a different Jackson Hewitt franchise or corporate store. Through these policies and a broader "No Poach" culture that pervaded throughout Jackson Hewitt, Jackson Hewitt enforced an anticompetitive restraint on Movants and those similarly

situated. Movants allege that this policy resulted in the reduction or elimination of competition for employees, thereby suppressing employee compensation.

In an effort to support Movants' claims, Movants have requested relevant documents from Brooke Holdings. King Decl., Ex. B (Subpoena). Brooke Holdings operates 28 Jackson Hewitt franchises, and has documents related to the "No Poach" clause at issue in the Underlying Litigation in its possession, custody and control.

On November 30, 2020, Movants caused the Subpoena to validly issue to Brooke Holdings. On December 16, 2020, the Subpoena was served on Brooke Holdings. King Decl., Ex. C (Proof of Service). The Subpoena commanded Brooke Holdings to comply by January 2, 2021.

Counsel for Movants and counsel for Brooke Holdings have met and conferred extensively, including telephonically. On January 25, 2021, Joy Ramsingh, counsel for Brooke Holdings sent a letter to counsel for Movants seeking an extension to respond to the subpoena to February 19, 2021, in which Ms. Ramsingh indicated, "My client has every intention of responding to this subpoena pursuant to the Stipulated Protective Order issued in this matter on January 4, 2021." King Decl., ¶ 5 & Ex. D (Jan. 25, 2021 Letter from Joy Ramsingh).

On January 27, 2021, Bradley King, counsel for Movants, spoke telephonically with Ms. Ramsingh and agreed to an extension to February 15, 2021, for Brooke Holdings to respond to the Subpoena. During that telephone call, Ms.

Ramsingh indicated to Mr. King that Brooke Holdings had no objections to the Subpoena in light of the Stipulated Protective Order entered on January 4. King Decl., ¶ 6.

On February 15, 2021, Brooke Holdings produced documents in response to the Subpoena electronically by sending them to the email address indicated by Movants on the Subpoena. King Decl., ¶ 7; *see also* King Decl., Ex. E (Feb. 15, 2021 Ramsingh Letter). Brooke Holdings did not include any formal written objections to the Subpoena and its attached requests for production of documents. *Id..*

After Movants had an opportunity to review the documents produced by Brooke Holdings, Mr. King emailed Ms. Ramsingh on April 20, 2021, to indicate that the production was significantly deficient. King Decl., ¶ 8. In particular, Mr. King indicated that the production appeared to only be a data sample for six employees from a single franchise location, not a complete production of all responsive data for Brooke Holdings' 28 franchise locations. *Id*. Mr. King also indicated that, within that small sample, certain employee data also needed supplementing to be fully responsive to the Subpoena's requests. *Id.*

On April 26, 2021, Ms. Ramsingh responded to Mr. King's email, indicating that, because the subpoena was served on Brooke Holdings's Fort Valley, Georgia location, that Brooke Holdings "interpreted this subpoena as seeking information [only] from the Fort Valley location." King Decl., ¶ 9 & Ex. G (Apr. 26, 2021

Ramsingh Email). In a separate email the following day, Ms. Ramsingh indicated that Brooke Holdings would produce the additional data requested (although, again, only for the Fort Valley location), which she did via a spreadsheet in another email dated April 30, 2021. King Decl., ¶ 9.

On June 3, 2021, Mr. King emailed Ms. Ramsingh to request a full production of the requested data from all of Brooke Holdings' franchise locations. King Decl., ¶ 10. Ms. Ramsingh responded the next day, appearing to reiterate Brooke Holdings' position that only the Fort Valley location—not the other 27 Brooke Holdings locations—was subject to the Subpoena. King Decl., ¶ 11 & Ex. H (June 4, 2021 Ramsingh Email). That same day, June 4, 2021, Mr. King responded to Ms. Ramsingh's email by attaching the Subpoena and explaining that the Subpoena clearly seeks responsive documents from all of Brooke Holdings' franchise locations, not just the Fort Valley location where it was served. King Decl., ¶ 11.

Ms. Ramsingh did not respond to Mr. King's June 4 email and has not responded since, despite two follow up emails by Mr. King on July 30, 2021 and August 5, 2021, in which Mr. King indicated that Movants would be bringing the instant motion if Brooke Holdings continued to fail to comply with the Subpoena and complete the requested document production. King Decl., ¶ 12. As of the date of this filing, Ms. Ramsingh has not responded to these follow-up requests either.

King Decl., ¶ 13. Movants have been left with no recourse but to move this Court to compel Brooke Holdings' compliance with their Subpoena.

## DISCOVERY REQUEST AT ISSUE

To date, Brooke Holdings has produced relevant documents as to only one of the franchises it operates in response to the Subpoena. The Subpoena does not limit Movants' requests to one location and in fact seeks responsive documents relating to all its Jackson Hewitt locations. Movants and Jackson Hewitt jointly stipulated in the Underlying Litigation that Movants would withdraw Requests Nos. 3-15, 21-29, and 32-33, and Jackson Hewitt withdrew their objections as to the remaining requests in the Subpoena. *Robinson v. Jackson Hewitt, Inc.*, Case No. 19-cv-09066 (D.N.J. Jan. 4, 2021) ECF No. 129. As such the below requests are at issue:

**REQUEST NO. 1:**
Employment data for all individuals who worked at any of your JACKSON HEWITT locations from December 20, 2014 through the present, including the:
    a.    Name;
    b.    Unique employee identification number;
    c.    Compensation data/payroll information (e.g. wages per hour or salary);
    d.    Employer/store name, office number, and location (address);
    e.    Job title/position and/or employee classification (with related codes and descriptions);
    f.    Demographic information (e.g. social security number, home address, education level, age, and gender);
    g.    Employment dates (in each position if multiple held);
    h.    Number of hours logged per day, week, month, and/or year;
    i.    Records of promotions and corresponding pay increases/changes in benefits;
    j.    Full-time or part-time status;
    k.    Exempt or non-exempt status;

  l. Employee status (e.g., active, terminated) status;
  m. Leaves of absence;
  m. Whether or not an employee non-competition agreement (or similar document) was signed;
  n. Prior employment data; and
  o. Such other regularly maintained personnel data as may be relevant to the claims and defenses in this case.

**REQUEST NO. 2:**
Documents sufficient to explain the meaning of the data responsive to any of these Requests (including all record layouts, data dictionaries, field codes, and other codes or descriptions) and to show how to operate or run any of the programs maintained on the computer-related equipment or systems utilized by you to maintain data responsive to any of these Requests, including whether any such data can be produced within an excel spreadsheet.

**REQUEST NO. 16:**
All documents, including communications, between you and any JACKSON HEWITT location, whether Franchise-owned or owned by Jackson Hewitt Inc. or Tax Services of America Inc., regarding soliciting, recruiting, or hiring an individual employed at any time by you or another JACKSON HEWITT location from December 20, 2014 through the present.

**REQUEST NO. 17:**
All documents, including communications, regarding the Recruiting Fee Development Agreement, if any, as described in the JACKSON HEWITT Franchise disclosure Documents from December 20, 2014 through the present.

**REQUEST NO. 18:**
All documents, including communications, regarding the JACKSON HEWITT Franchise Agreement clause "Covenant Against Recruiting or Hiring Out Employees" from December 20, 2014 through the present.

**REQUEST NO. 19:**
All documents that analyze, evaluate, or summarize competition from December 20, 2014 through the present:
  a. for JACKSON HEWITT customers between Franchises;
  b. for JACKSON HEWITT customers between Franchises and Jackson Hewitt Inc. or Tax Services of America Inc.-owned locations;
  c. for JACKSON HEWITT labor;

    d.    with other non-JACKSON HEWITT companies providing tax preparation services.

**REQUEST NO. 20:**
All documents, including communications, regarding agreements between you and Jackson Hewitt Inc. or Tax Services of America, Inc. regarding your recruiting or hiring practices for any JACKSON HEWITT location from December 20, 2014 through the present.

**REQUEST NO. 30:**
All documents relating to calculating, setting, modifying, raising or lowering compensation paid to persons hired or to be hired as employees in a JACKSON HEWITT location from December 20, 2014 through the present.

**REQUEST NO. 31:**
All documents relating to any requests by any employee that worked in a JACKSON HEWITT location from December 20, 2014 through the present for transfer to or employment by another JACKSON HEWITT location whether corporate-owned location or a franchise.

## ARGUMENT

### A. Standard Applicable to Third-Party Discovery

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The scope of subpoenas for production of documents under Rule 45 is the same." *Kemper v. Equity Ins. Co.*, No. 1:15-cv-2961-TCB, 2016 WL 7428215, at *2 (N.D. Ga. Apr. 29, 2016) (internal quotes omitted). "Historically, courts have construed relevance liberally in the context of discovery, and it has long been recognized that information 'need not be admissible in evidence to be discoverable.'" *Id*. Accordingly, a Rule 45 subpoena

may seek "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1); *accord Pinehaven Plantation Props., LLC v. Mountcastle Family LLC*, Case No. 1:12-cv-62 (WLS), 2013 WL 6734117, at *1 (M.D. Ga. Dec. 19, 2013). A Rule 45 subpoena should not impose undue burdens upon a party. Fed. R. Civ. P. 45(c)(3)(A)(iv). "Although the scope of discovery is broad, a district court may limit discovery when the burden of compliance outweighs its likely benefit or relevance." *Colony Ins. Co. v. All Cities Enterprises, Inc.*, No. 7:18-CV-00126 (WLS), 2019 WL 5850548, at *2 (M.D. Ga. June 11, 2019) (internal quote omitted). The party resisting discovery bears the burden of showing "specifically how the objected-to request is unreasonable or otherwise unduly burdensome." *Kemper v. Equity Ins. Co.*, c, at *4; *see Faraday Cap. Ltd. v. 325 Goodrich Ave., LLC*, No. 5:10-cv-278 (CAR), 2011 WL 13249844, at *1 (M.D. Ga. June 3, 2011) (enforcing subpoena where recipients "failed to show that these requests are irrelevant, unduly burdensome, or related to privileged or other protected matter.").

### B. Movants' Requests Satisfy Rule 26 Requirements

Movants' requests to Brooke Holdings seek relevant information well within the broad ambit of the Federal Rules. *See Barrio Bros. LLC v. Revolucion,* LLC, Case No. 1:18-CV-025052, at *3 (N.D. Ohio Jan. 28, 2021) ("Relevance for discovery purposes is extremely broad.") (internal quotation marks and citations

omitted); *accord Mitchell v. Fishbein*, 227 F.R.D. 239, 248 (S.D.N.Y. 2005). Here, the relevance of the documents that Movants request is apparent. At a high level, these requests are simply for documents and data related to the employment and salaries for individuals and the policies surrounding those decisions, communications with Defendants related to the same, and franchise agreements. These types of documents are facially relevant to the Movants' claims that Jackson Hewitt's policies and procedures stifled the marketplace and suppressed wages of employees of Jackson Hewitt stores including Jackson Hewitt franchises owned by Brooke Holdings—and Brooke Holdings has never maintained otherwise. Movants also have a substantial need for these documents: these documents are only available from Jackson Hewitt franchisees themselves. Movants cannot obtain the requested documents from Jackson Hewitt itself but instead must request the documents from Brooke Holdings.

**C. Movants' Requests Are Proportionate to the Needs of the Case.**

A Rule 45 subpoena must avoid undue burden or expense. Fed. R. Civ. P. 45(d)(1). The material sought must be relevant to a party's claim or defense and proportional to the needs of the case. Rule 26(b) "sets forth the following factors to consider when determining whether discovery is proportional to the needs of the case: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Kemper v. Equity Ins. Co.*, 2016 WL 7428215, at *1. While Courts typically view non-party status as a factor weighing in favor of an undue burden, non-party status is not dispositive. *Pinehaven Plantation Props.*, 2013 WL 6734117, at *2; *see also Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012); *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974).

Here, Movants' discovery requests do not subject Brooke Holdings to an undue burden. Movants have readily demonstrated the relevance and need for the requested documents. Movants' requests are narrowly tailored to request documents relevant to the Underlying Litigation—Movants' requests are limited to the class period, and describe the documents sought with particularity. Indeed, Brooke Holdings's attempt to limit the Subpoena to a single location is puzzling—the Subpoena and the relevant Requests therein on their terms applies to *any* Jackson Hewitt location owned and operated by Brooke Holdings, *see, e.g.*, Subpoena, Req. No. 1 ("Employment data for all individuals who worked at *any* of your JACKSON HEWITT locations . . .") (emphasis added), and seems to rest either on a misreading of the particularized Requests or a unilateral attempt to evade complying with a duly issued subpoena.

Movants have made repeated efforts to meet and confer with Brooke Holdings in order to mitigate any burden complying with the Subpoena may subject to Brooke Holdings. And Brooke Holdings has never disputed that the documents Movants seek are within Brooke Holdings's possession, custody or control. Further, Brooke Holdings has not indicated with any particularity what the burden of fully complying with the Subpoena would be, let alone that any such burden would be undue. *See KMC Acquisition Corp. v. Escoe Indus. Mech., Inc.*, No. 3:15-CV-119 (CAR), 2017 WL 354852, at *2 (M.D. Ga. Jan. 24, 2017) ("no evidence exists suggesting compliance would be an undue burden").

### D. Any Confidential Information is Adequately Protected by the Discovery Confidentiality Order Operative in the Underlying Litigation

To the extent Brooke Holdings may object that producing responsive documents may implicate protected information, any such concerns are explicitly addressed by the Discovery Confidentiality Order entered in the Underlying Litigation.

Rule 26(c) permits a court to issue an order to protect "[a] party or any person" from "annoyance, embarrassment, oppression, or undue burden or expense." The Court in the Underlying Litigation has already issued such an order, *Robinson v. Jackson Hewitt, Inc.*, Case No. 19-cv-09066 (D.N.J. Jan. 4, 2021) ECF No. 86 (Discovery Confidentiality Order), and documents produced by Brooke Holdings

have already been designated consistent with the Discovery Confidentiality Order. King Decl., Ex. F (Discovery Confidentiality Order).

The Discovery Confidentiality Order on its face applies to "private or confidential personal information" and allows both parties and nonparties to the Underlying Litigation to designate such information as Confidential. *See* Discovery Confidentiality Order ¶ 1. Further, the Discovery Confidentiality Order stipulates parties and nonparties can designate "business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the designating party" as ATTORNEYS' EYES ONLY. *See id.*, ¶ 2. Courts have consistently ordered the production of confidential information subject to a protective order with an "attorneys' eyes only" provision including from nonparties. *See*, *e.g.*, *Mohegan Lake Motors Inc. v. Maoli*, Case No. 16CV6716, 2018 WL 4278351, at *2 (S.D.N.Y. Apr. 6, 2018) (rejecting a nonparty's argument that a protective order would not adequately protect the nonparty's confidential information and ordering production of said documents with an "attorneys' eyes only designation"); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116 (PGG), 2009 WL 1422743, at *5-6 (S.D.N.Y. May 20, 2009) (where the court ordered production of confidential documents even though the defendants argued that disclosure would "significantly harm" third parties). And any concern Brooke Holdings or the Court may have with regards to the production of

confidential information including personal information is assuaged due to the Discovery Confidentiality Order that is already operative in the Underlying Litigation.

### E. Brooke Holdings has Waived its Right to Object

Brooke Holdings has not timely submitted a single objection to the documents requested in the subpoena *duces tecum*. Fed. R. Civ. P. 45(d)(2)(B); *see also Viking Yacht Co. v. Composites One LLC*, Case No. 3:07-mc-001, 2007 WL 869623 at *2 (E.D. Tenn. Mar. 21, 2007) ("The failure to serve written objections within the time required by [former] Rule 45(c)(2)(B) generally operates to waive any such objections.") (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996). Indeed, in Brooke Holdings's correspondences with Movants regarding the Subpoena, Brooke Holdings did not offer even boilerplate objections to the Subpoena or individual requests. *See* King Decl., Exs. D & E (Jan. 25, 2021 and Feb. 25, 2021 Ramsingh Letters). Brooke Holdings's failure to timely submit any objections has thus resulted in waiver of any possible objection it may now attempt to belatedly present. *See Hartford Cas. Ins. Co. v. Calcot, Ltd.,* No. 2:07-cv-02405-BBD-dkv, 2009 WL 10699695 at *3-4 (W.D. Tenn. April 7, 2009).

## **GOOD FAITH CERTIFICATION**

Pursuant to Local Rule 37, the undersigned certifies that Movant has in good faith conferred with counsel for Brooke Holdings in an effort to secure the information sought in the Subpoena without the necessity of this proceeding.

## **CONCLUSION**

Movants have appropriately sought relevant documents from a third-party via a subpoena *duces tecum*.  Indeed, Brooke Holdings has already produced some documents. However, due to ongoing deadlines in the underlying antitrust matter, Movants cannot afford to permit Brooke Holdings to delay any longer.  Movants respectfully request the Court order Brooke Holdings to produce all documents requested under the subpoena duces tecum.

This the 23rd day of August, 2021.

                            BERMAN FINK VAN HORN P.C.

                            By: */s/ Benjamin I. Fink*
                                  Benjamin I. Fink
                                  Georgia Bar No. 261090
                                  William J. Piercy
                                  Georgia Bar No. 579627
                                  Email:  bfink@bfvlaw.com
                                  Email:  bpiercy@bfvlaw.com

| | |
|---|---|
| 3475 Piedmont Road, NE | COUNSEL FOR MOVANTS |
| Suite 1100 | JESSICA ROBINSON, STACEY |
| Atlanta, Georgia 30305-6400 | JENNINGS AND PRISCILLA |
| Telephone:  (404) 261 -7711 | MCGOWAN |
| Facsimile:  (404) 233-1943 | |

Of Counsel Pending Admission Pro Hac Vice:

**LITE DEPALMA GREENBERG, LLC**

Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
(973) 877-3820
bgreenberg@litedepalma.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri
Steven N. Williams
Christopher K.L. Young
601 California Street, Suite 1000
San Francisco, California 94108
(415) 500-6800
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
cyoung@saverilawfirm.com

**HARTLEY LLP**
Jason S. Hartley
101 West Broadway, Suite 820
San Diego, California 92101
(619) 400-5822
hartley@hartleyllp.com

**PAUL LLP**
Richard M. Paul III
Laura C. Fellows
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
(816) 984-8100
rick@Paulllp.com
laura@Paulllp.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson
Amanda M. Williams
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844 dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com

**FREED KANNER LONDON & MILLEN LLC**
Douglas A. Millen
Brian Hogan
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
dmillen@fklmlaw.com
bhogan@fklmlaw.com

**AHDOOT & WOLFSON, PC**
Bradley King
Henry Kelston
1016 Palm Ave
West Hollywood, CA 90069
Tel: (310) 474-9111
bking@ahdootwolfson.com
hkelston@ahdootwolfson.com